Jenny Lee HENRY, Petitioner,

v.

John ASHCROFT, et al., Respondents.

No. 01 Civ. 3377(DC).

United States District Court,
S.D. New York.

Nov. 30, 2001.

Cleary, Gottlieb, Steen & Hamilton, By: Robert T. Greig, New York City, for Petitioner.

Mary Jo White, United States Attorney for the Southern District of New York, By: Megan L. Brackney, Assistant United States Attorney, New York City, for Respondents.

## OPINION

CHIN, District Judge.

Petitioner Jenny Lee Henry seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, vacating her order of removal and declaring her eligible to apply for a cancellation of removal pursuant to § 240A of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1229b, and a waiver of removal pursuant to INA § 212(h), 8 U.S.C. § 1182(h).

This case presents an issue of apparent first impression: whether a provision of a statute enacted in 1996 limiting an alien's ability to seek relief from an order of removal can be applied, retroactively, to a crime committed more than seven years

before the statute took effect, where the removal proceedings were not commenced until several years after the statute took effect. I hold that the application of the provision to a crime committed before the law was passed, where removal proceedings were not commenced until after the law took effect, would violate the ex post facto clause of Art. I, Sect. 9, Cl. 3 of the Constitution. Accordingly, the petition is granted.

## BACKGROUND

### I. Statutory Background

Pursuant to INA § 237, an alien who has been convicted of two crimes of moral turpitude not arising out of a single scheme of criminal conduct is subject to removal. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). Petit larceny historically has been considered a crime involving moral turpitude. *See Brett v. INS*, 386 F.2d 439, 439 (2d Cir.1967), *cert. denied*, 392 U.S. 935, 88 S.Ct. 2304, 20 L.Ed.2d 1394 (1968); *United States ex rel. Ventura v. Shaughnessy*, 219 F.2d 249, 251 (2d Cir.1955).

Prior to 1996, certain lawful permanent residents ("LPRs") otherwise determined to be deportable were entitled to apply to the Attorney General for a waiver of deportation under INA § 212(c).[1] *See* 8 U.S.C. § 1182(c) (1990). To qualify for a waiver under INA § 212(c), an alien had to have seven continuous years of lawful residence in the United States. *See id.*

On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which "altered many aspects of the immigration laws, including the eligibility requirements for discretionary relief from deportation." *Rojas–Reyes v. INS*, 235 F.3d 115, 120 (2d Cir.2000). "Removal"

proceedings replaced what had previously been called "deportation" and "exclusion" proceedings. *Id.* (citing IIRIRA § 304(a)(3), *codified at* 8 U.S.C. § 1229a). Relief from deportation—"suspension of deportation"—was replaced with a new form of relief, called "cancellation of removal." *Id.* (citing IIRIRA § 304(a)(3), *codified at* 8 U.S.C. § 1229b).

To qualify for a cancellation of removal under IIRIRA, an alien must establish seven continuous years of residence in the United States, just as under the repealed INA § 212(c). *See* INA § 240A(a)(2), 8 U.S.C. § 1229b(a)(2). IIRIRA, however, also added a "clock stopping" provision that had not existed with respect to INA § 212(c). *See* INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1) (Supp.2001). The clock stopping provision provides:

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2), when the alien is served a notice to appear under section 1229(a) of this title, or (B) *when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.*

*Id.* (emphasis added). In other words, under this provision, an alien's accrual of a period of continuous residence stops when she is served with a notice to appear or when she commits an included offense.

---

1. The discretionary relief available under INA § 212(c) applied to aliens seeking a waiver in exclusion proceedings as well as aliens seeking a waiver in deportation proceedings. *See Francis v. INS*, 532 F.2d 268, 273 (2d Cir. 1976).

## II. *Facts*

Petitioner, a native of Guyana, entered the United States as an LPR on November 11, 1984. (Gov. Return, Ex. A at 72). Petitioner has at least three convictions for petit larceny,[2] the first dated October 5, 1987. (Gov. Return, Ex. A at 85). Her most recent convictions, based on guilty pleas, occurred on January 10 and March 14, 2000. (Gov. Return, Ex. A at 103, 105). As a result of these convictions, as she concedes, petitioner is subject to removal.

Petitioner has not traveled abroad since her arrival in the United States on November 11, 1984. (Gov. Return, Ex. A at 227). Petitioner has five children, all born in the United States, ranging in age from three to eleven years old. (Gov. Return, Ex. A at 238–42).

## III. *Procedural History*

On May 24, 2000, the Immigration and Naturalization Service ("INS") commenced removal proceedings against petitioner by serving her with a notice to appear. (Gov. Return, Ex. A at 258). Petitioner responded by filing a timely application for cancellation of removal pursuant to INA § 240A. (Gov. Return, Ex. A at 226–32); *see* 8 U.S.C. § 1229b. Immigration Judge John A. Duck, Jr. (the "IJ") "pretermitted" her application for cancellation based upon his finding that petitioner failed to satisfy the continuous residence requirement under INA § 240A(a)(2). (Gov. Return, Ex. A at 73); *see* 8 U.S.C. § 1229b(a)(2). In declaring petitioner ineligible for cancellation of removal, the IJ

relied on the interpretation of the clock stopping provision in *In re Perez,* Int. Dec. 3389, No. A91 875 147, 1999 WL 293944 (BIA May 12, 1999).[3] Petitioner filed an appeal and in March 2001, the Board of Immigration Appeals (the "BIA") affirmed the IJ's denial of petitioner's application for cancellation of removal. (Gov. Return, Ex. A at 22).

On December 12, 2000, the IJ ordered petitioner removed from the United States to Guyana. (Gov. Return, Ex. A at 51–2). Petitioner filed this writ of habeas corpus on April 20, 2001. Three days later, petitioner filed with the BIA a motion to reconsider the removal order. (Gov. Return, Ex. A at 8–9). In May 2001, the BIA denied her motion to reconsider. (Gov. Return, Ex. A at 2–3).

### *DISCUSSION*

Petitioner seeks habeas relief on the following grounds: (1) the clock stopping provision in INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1), was given an improper retroactive effect in her case; and (2) she was denied equal protection of the laws because INA § 212(h), 8 U.S.C. § 1182(h), improperly distinguishes between similarly situated classes of aliens: LPRs with two convictions for crimes of moral turpitude who have traveled outside of the country and LPRs with two convictions for crimes of moral turpitude who have not traveled outside of the United States.

---

**2.** Petitioner has approximately 20 convictions for petit larceny since October 5, 1987. (Gov. Return, Ex. A at 82–107). Her repeated criminal conduct may factor into the consideration of her application for a discretionary waiver on remand. For purposes of this writ, however, only the October 5, 1987 conviction is relevant in deciding whether the clock stopping provision has an improper retroactive effect.

**3.** In *Perez,* the Board of Immigration Appeals (the "BIA") held that an alien ceases to accrue time towards the seven year continuous residence requirement on the date the crime was committed, not the date the alien was convicted, even if the crime was committed before IIRIRA was enacted. *Perez,* 1999 WL 293944, at section V.

## I. *Retroactive Application of the Clock Stopping Provision*

■ Petitioner entered the United States as an LPR on November 11, 1984, and she was convicted of petit larceny for the first time on October 5, 1987. If the clock stopping provision applies to her October 5, 1987 conviction, then she is not eligible for cancellation of removal, as the two years and eleven months between her entry and first conviction would fall far short of the seven year requirement. If the clock stopping provision is not applicable—and the immigration laws in effect at that time contained no clock stopping provision—then petitioner satisfied the seven years residence requirement by November 1991, long before she committed the crimes for which she was convicted in January and March of 2000. Hence, if the clock stopping provision does not apply, then petitioner was eligible for a discretionary waiver of deportation after November 1991. The issue, thus, is whether the clock stopping provision, enacted in 1996, applies to petitioner's October 5, 1987 conviction, effectively stripping her of eligibility for a discretionary waiver.

In her petition for habeas relief, petitioner argues that application of the clock stopping provision to her October 1987 conviction would result in the law being given impermissible retroactive effect. Therefore, she argues, the clock stopping provision should not be construed to preclude her from seeking a waiver of deportation under former INA § 212(c). Respondents argue that Congress clearly intended for the clock stopping provision to apply retroactively and that there is no impermissible retroactive effect because petitioner was subject to deportation before she accrued the necessary seven years of continuous residence.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court reiterated the long-standing principle that laws generally should not be given retroactive effect. "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Id.* at 265, 114 S.Ct. 1483. At the same time, the Court acknowledged the "apparent tension" between the axiom that " '[r]etroactivity is not favored' " and the rule that " 'a court is to apply the law in effect at the time it renders its decision.' " *Id.* at 264, 114 S.Ct. 1483 (*quoting Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)); *see Yesil v. Reno*, 973 F.Supp. 372, 378 (S.D.N.Y.1997).

■ *Landgraf* and other Supreme Court decisions establish a two-step analysis for determining whether a statute has retroactive effect. First, the court "is to determine whether Congress has expressly prescribed the statute's proper reach." 511 U.S. at 280, 114 S.Ct. 1483. If so, the inquiry need proceed no further and the court need not "resort to judicial default rules." *Id.*

■ Second, if "the statute contains no such express command, the court must determine whether the new statute would have retroactive effect." *Id.* The court does so by "ask[ing] whether the new provision attaches new legal consequences to events completed before its enactment," *id.* at 269–70, 114 S.Ct. 1483, and by examining "whether [the statute] would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. 1483. As courts make this inquiry, "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Id.* at 270, 114 S.Ct. 1483. If the statute would

operate "retroactively" under this analysis, then "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.* at 280, 114 S.Ct. 1483.

■■ The Court in *Landgraf* also emphasized that "application of new statutes passed after the events in suit is unquestionably proper in many situations." *Id.* at 273, 114 S.Ct. 1483. Indeed, when the new statute "authorizes or affects the propriety of prospective relief," its application is "not retroactive." *Id.* Likewise, statutes "conferring or ousting jurisdiction" that "'speak to the power of the court rather than to the rights or obligations of the parties'" generally do not raise concerns about retroactivity. *Id.* at 274, 114 S.Ct. 1483 (*quoting Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 99, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)). Finally, "[c]hanges in procedural rules may often be applied in suits arising before their enactment" without violating the principle against retroactivity. *Id.* at 275, 114 S.Ct. 1483. In reviewing these permissible retroactive applications of new laws, however, the Supreme Court reaffirmed "the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Id.* at 278, 114 S.Ct. 1483.

The Supreme Court has recently applied the *Landgraf* analysis to similar changes in the immigration laws made by IIRIRA. *See INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Pursuant to INA § 240A(a)(3), enacted by IIRIRA, any alien who has been convicted of an aggravated felony is ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3). In *St. Cyr,* the Supreme Court held that applying INA § 240A(a)(3) to aliens who had pled guilty to aggravated felonies before the enactment of IIRIRA would have an improper retroactive effect because it "clearly 'attaches a new disability, in respect to transactions or considerations already past.'" *St. Cyr,* 121 S.Ct. at 2291 (*quoting Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483).

■ For the reasons set forth below, I hold that the clock stopping provision does not apply to crimes committed before IIRIRA was signed into law, where removal proceedings are not commenced until after IIRIRA's effective date. First, the statute itself does not clearly indicate whether Congress intended for it to apply retroactively in these circumstances. Second, under the "judicial default" rules, the clock stopping provision would have an improper retroactive effect because it attaches new legal consequences to completed events and disrupts the settled expectations of long-time LPRs.

## A. Congressional Intent

INA § 240A(d)(1) contains no language addressing its applicability to orders to show cause issued or crimes committed before its enactment. *See* 8 U.S.C. § 1229b(d)(1). Congress, however, addressed certain aspects of the retroactivity of INA § 240A(d)(1) in § 309(c)(5) of IIRIRA, which is entitled "Transitional Rules with Regard to Suspension of Deportation." Section 309(c)(5) provides that, in deportation cases pending when IIRIRA took effect, the clock stopping provision applies to "orders to show cause issued before, on, or after the date of the enactment of [IIRIRA]." Pub.L. No. 104–208, 110 Stat. 3009 (1996).

■ IIRIRA "generally applies only to proceedings initiated on or after the statute's effective date of April 1, 1997." *Rojas–Reyes,* 235 F.3d 115. In *Rojas–Reyes,* however, the Second Circuit noted that § 309(c)(5) "applies the stop-time provision to suspension applications submitted in *deportation proceedings under prior law.*" *Id.* (emphasis added). Hence, the Second

Circuit was of the view that the transitional rules applied to cases actually pending when IIRIRA took effect, that is, deportation proceedings commenced under prior law.

The Second Circuit also noted that when 309(c)(5) was enacted, it referred to "notices to appear" rather than "orders to show cause." "Notices to appear" are used to commence deportation proceedings initiated on or after IIRIRA's effective date; in contrast, prior to the enactment of IIRIRA, deportation proceedings were commenced by service of a charging document called an "order to show cause." *Id.* Hence, the use of "notices to appear" in reference to deportation proceedings under prior law was confusing. Congress sought to eliminate the confusion by passing yet another statute, the Nicaraguan Adjustment and Central American Relief Act of 1997 (the "NACARA"), Pub.L. No, 105–100, Title II, 111 Stat. 2160, 2193–201 (Nov. 19, 1997), amended by Pub.L. No. 105–139, 111 Stat. 2644 (dec. 2, 1997). The NACARA replaced the words "notice to appear" with the pre-IIRIRA phrase "order to show cause." *See Rojas–Reyes*, 235 F.3d at 120–21.

What this change in statutory language shows is that Congress intended "to apply the stop-time rule to all requests for suspension of deportation *pending* on April 1, 1997." *Rojas–Reyes*, 235 F.3d at 121 (emphasis added). In *Rojas–Reyes*, INS had commenced deportation proceedings against the alien in 1993 and the proceedings were pending when IIRIRA took effect. Hence, the petitioner fell squarely within the scope of § 309(c)(5), and the Second Circuit held that the retroactive application of the clock stopping rule to Rojas–Reyes was constitutional.

Section 309(c)(5) does not apply to this case, however, for the transitional rules apply only to pending deportation cases. Petitioner was not in exclusion or deportation proceedings on IIRIRA's effective date, and she was never served with an "order to show cause." Rather, "cancellation proceedings" were brought against her on May 24, 2000, well after IIRIRA's effective date, when INS served her with a "notice to appear."

Consequently, nothing in § 309(c)(5) or any of the other transitional rules or in the clock stopping provision itself addresses the situation of retroactive application of the clock stopping provision to cancellations proceedings commenced after the effective date of IIRIRA where the criminal conduct was committed before IIRIRA was passed. Congress was silent in this respect. Section 309(c)(5) shows, however, that when Congress wanted the clock stopping provision to apply retroactively to a limited category of cases—deportation cases pending when IIRIRA took effect—it said so clearly. If Congress had intended for the clock stopping provision to apply to crimes committed before the law was passed where removal proceedings had not yet been commenced, Congress could have so provided. It did not. At a minimum, then, the statute is unclear as to Congress's intent with respect to retroactive application of the clock stopping provision to crimes committed before IIRIRA's effective date where cancellation proceedings were not commenced until after IIRIRA took effect.

This result may seem counterintuitive; logic would suggest that if the clock-stopping provision applies to crimes committed before IIRIRA was passed where deportation proceedings were pending, it should apply as well to crimes committed before IIRIRA was passed where cancellation proceedings were not commenced until later. But the fact is that Congress did not specifically address the category of cases before the Court.

IIRIRA was enacted just two years after the Supreme Court decided *Landgraf.*

Congress presumably was well aware of the teachings of *Landgraf*—including its admonition that Congress should be explicit when it intended a new law to apply retroactively—when it elected not to include explicit language making the clock stopping provision applicable to crimes committed prior to the effective date of IIRIRA where cancellation proceedings were not commenced until later.

Congress's intent in enacting the transitional rules is also instructive. In enacting § 309(c)(5), Congress specifically sought to prevent aliens from purposefully delaying their deportation proceedings until they had accrued the seven years of continuous residence required for eligibility. H.R.Rep. No. 104–879, at 108 (1997). This purpose would *not* be furthered by interpreting the retroactive language of § 309(c)(5) to apply to cases such as the case here, where the seven years had already accrued long before the effective date of IIRIRA and no INS proceedings were pending at that time. There were no proceedings against petitioner that could be delayed when IIRIRA was passed.

In sum, the text of IIRIRA and the legislative history demonstrate that Congress did not clearly intend for the clock stopping provision to apply retroactively to crimes committed before its effective date, where removal proceedings had not yet been commenced by IIRIRA's effective date.

## B. *Improper Retroactive Effect*

The clock stopping provision, as applied by the IJ in petitioner's case, has an improper retroactive effect. It attaches new legal consequences to events completed before its enactment, and it impairs important rights possessed by petitioner at the time she acted and significantly increases her liability for that past conduct.

█ The availability of relief from deportation—even the possibility thereof—is a critical factor to an alien who is considering whether to enter into a guilty plea. *See United States v. Del Rosario*, 902 F.2d 55, 61 (D.C.Cir.1990) (Mikva, J., concurring) ("The possibility of being deported can be—and frequently is—the most important factor in a criminal defendant's decision how to plead."), *cert. denied*, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *Mojica v. Reno*, 970 F.Supp. 130, 175 (E.D.N.Y.1997) ("For a non-citizen, the choice to forego trial and plead guilty is often critically dependent on information regarding possible immigration consequences."), *aff'd in part, dismissed in part, Henderson v. INS*, 157 F.3d 106 (2d Cir.1998). An alien who decided to plead guilty to a crime that rendered her deportable might very well have done so with the expectation that if she rehabilitated herself and showed that she was deserving of a second chance, she would have the opportunity to seek relief from deportation by way of a § 212(c) application. On the other hand, if she had known that there was no possibility of relief from deportation, if she had known that it was a certainty that she would be banished from this country and separated from her five children, she might very well have come to a different conclusion.[4] *See Mojica*, 970

---

4. The Government correctly points out that the statute stops accrual of continuous residence upon an alien's commission of a crime, and *not* upon an alien's conviction of a crime. *See* INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1) (Supp.2001). The Court is meant to infer from this distinction that petitioner, in all

likelihood, did not rely on her continued eligibility for a discretionary waiver of deportation when she committed petit larceny on October 5, 1987. Thus, the Government suggests, she has not been deprived of any settled expectation through the retroactive application of the clock stopping provision. The Government's

F.Supp. at 176 ("The importance of immigration consequences of pleas in criminal cases cannot be underestimated. Deportation to a country where a legal permanent resident of the United States has not lived since childhood; or where the immigrant has no family or means of support; or where he or she would be permanently separated from a spouse, children and other loved ones, is surely a consequence of serious proportions that any immigrant would want to consider in entering a plea.").

 A right to discretionary relief is a substantive right, and the elimination of even the possibility of obtaining relief thus has a retroactive effect. *See Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 663, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974) (indicating that a statute taking away parole eligibility for offenses for which parole was available under the law in existence at the time the offenses were committed could be found to be constitutionally impermissible as an ex post facto law).

 Prior to the enactment of the clock stopping provision, the seven years of continuous lawful residence required for an INA § 212(c) waiver did not end until a deportation order became administratively final. *See Lok v. INS,* 681 F.2d 107 (2d Cir.1982). Hence, under the immigration laws in effect prior to IIRIRA, petitioner did not become statutorily ineligible for INA § 212(c) relief when she entered a guilty plea to petit larceny on October 5, 1987. After petitioner accrued seven continuous years of lawful residence, she had a reasonable expectation that INA § 212(c) relief was available to her. It is an impermissible retroactive application of the clock stopping provision to strip petitioner of that reasonable expectation.

### C. *Deference*

 Courts owe deference to administrative tribunals in their interpretations of statutes that they are charged with implementing. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). When an administrative agency's interpretation is unreasonable, however, a court is not constrained by the deference principle. *See Bell v. Reno,* 218 F.3d 86, 90 (2d Cir.2000), *cert. denied,* 531 U.S. 1081, 121 S.Ct. 784, 148 L.Ed.2d 680 (2001). Because the clock stopping provision has an impermissible effect when applied retroactively, the BIA's interpretation of it in *Perez* is unreasonable and deference is not owed to it.

### CONCLUSION

Absent clear intent from Congress that the clock stopping provision applies retroactively to cancellation proceedings commenced after the effective date of IIRIRA where the crime was committed before the statute became law, and considering the unfairness that would result from applying the clock stopping provision retroactively in the circumstances of this case, I hold that petitioner is eligible to apply for cancellation of removal pursuant to INA § 240A, 8 U.S.C. § 1229b. Accordingly, this case is remanded to the INS for consideration of petitioner's application for cancellation of removal and other proceedings not inconsistent with this decision.

As to petitioner's equal protection claim, I do not reach it. The Government states that petitioner was not barred from apply-

---

argument is unavailing, though, because petitioner was eligible for discretionary relief before IIRIRA was enacted in 1996. Regardless of whether she relied on her eligibility, it is the retroactive denial of an already accrued eligibility for discretionary relief that gives the clock stopping provision its impermissible retroactive effect.

ing for a discretionary waiver pursuant to INA § 212(h), 8 U.S.C. § 1182(h), but notes that she never submitted such an application. The Government thus argues that petitioner failed to exhaust her administrative remedies in this respect. As the case is being remanded in any event, on remand petitioner may submit an application pursuant to § 212(h) as well.

The Clerk of the Court shall enter judgment granting the petition and remanding the case to INS to permit petitioner to file applications for cancellation of removal pursuant to INA § 240A and a waiver of removal pursuant to INA § 212(h). The Clerk of the Court shall close this case, but the Court retains jurisdiction in the event further proceedings in this Court become necessary.

SO ORDERED.