**Philip Orlanda WORRELL,**
**# A37186541, Petitioner,**

v.

**John ASHCROFT, Attorney General,[1]**
**INS et al., Respondents.**

No. 00–CV–6174 CJS.

United States District Court,
W.D. New York.

March 29, 2002.

---

1. John Ashcroft became the United States Attorney General, effective February 2001, to succeed Janet Reno. Under Fed.R.Civ.P 25(d)(1), Ashcroft is automatically substituted as a defendant in this action.

**62**

Philip Orlanda Worrell, Batavia, NY, pro se.

Monica J. Eagan, U.S. Attorney's Office, Buffalo, NY, for defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

Now before the Court are petitioner's petition for a writ of habeas corpus [# 1], pursuant to 28 U.S.C. § 2241, respondents' motion to dismiss [# 11], and petitioner's motions [# 15][# 18][# 19] requesting that he be released from the custody of the U.S. Immigration and Naturalization Service (INS). For the reasons that follow, respondents' motion to dismiss is granted, petitioner's motions are denied, and the petition is dismissed.

## BACKGROUND

The facts of this case are not in dispute. Petitioner is a citizen of Barbados, who has been residing in the United States as a legal permanent resident since March 20, 1984. On June 6, 1990, petitioner was indicted on the charge of Criminal Possession of a Weapon in the 3rd degree, for an incident that occurred on May 29, 1990. On March 27, 1991, petitioner pled guilty to this charge in New York State Supreme Court, Bronx County, and was sentenced to five years of probation. On October 26, 1998, petitioner was also convicted of Criminal Contempt, and was sentenced to one year in jail. According to respondents, petitioner was convicted of the contempt charge as a result of violating an order of protection and threatening to kill his former girlfriend. (Decision to Continue Detention dated August 16, 2000, attached to document [# 10] ). Petitioner acknowledges the contempt conviction, but denies that he violated the order of protection or that he threatened to kill anyone. (Petitioner's Brief and Appendix, attached to document [# 10], p. 5).

As a result of his conviction for possession of a weapon, the INS charged petitioner with removability pursuant to INA § 237(a)(2)(C). Although, as noted, petitioner committed the weapons offense in 1990, and was convicted in 1991, the INS did not begin removal proceedings against him until September 8, 1998. (Respondents' Motion to Dismiss, Exhibits, p. 27). In the meantime, and as will be discussed further below, the Immigration and Nationality Act ("INA") had been amended twice, first by the Antiterrorism and Effective Death Penalty Act (AEDPA), and then by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). The impact of these amendments, with regard to the instant case, was succinctly described in a recent decision by Judge Block of the Southern District of New York:

> Prior to 1996, former INA § 212(c) allowed immigrants [found deportable] an opportunity for a discretionary hearing where they could urge waiver of deportation on compassionate grounds. Section 212(c) was limited and then eliminated by two statutes adopted in 1996, the [AEDPA] and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) (collectively, the '1996 Acts').
>
> \*  \*  \*  \*  \*  \*
>
> Although the 1996 acts eliminated § 212(c), Congress provided, in its place, for a new, limited opportunity to avoid

deportation, known as "cancellation of removal." See 8 U.S.C. § 1229b.

*Cyrus v. Ashcroft*, No. 00–CV–3621 (FB), 2002 WL 377050 at *1–2 (E.D.N.Y. Mar. 8, 2002). Section 1229b provides, *inter alia,* that to be eligible for cancellation of removal, the alien must have "resided in the United States continuously for 7 years after having been admitted." 8 U.S.C. § 1229b(a)(2). However, Section 1229b(d)(1) contains a "stop-time provision," which provides that any period of continuous residence shall be deemed to end when the alien is served with a notice to appear, or when the alien commits the offense which renders him removable. In the instant case, petitioner committed his weapons offense less than seven years after being admitted to the United States.

Petitioner was represented by counsel at all stages of the immigration proceedings. Throughout those proceedings, petitioner maintained that he should not be deported for two reasons.[2] First, he claimed that the IIRIRA could not retroactively repeal INA § 212(c), and that accordingly, he was eligible for 212(c) relief. Second, and alternatively, he argued that he was eligible for cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a). In finding the petitioner deportable, the Immigration Judge ("IJ") first noted, *inter alia,* that "Section 212(c) relief has never been available to cure deportability based on criminal possession of a weapon." (Respondents' Motion to Dismiss [# 11], Exhibits, p. 68). Further, the IJ found that peti-

---

**2.** It appears that petitioner also considered and rejected a third option, which was to apply for adjustment of his status pursuant to 8 U.S.C. § 1255. *See, Cinquemani v. Ashcroft,* No. 00–CV–1460 (RJD), 2001 WL 939664 at *5 (E.D.N.Y. Aug.16, 2001) ("This discretionary 'adjustment' is available notwithstanding an alien's firearms convictions and regardless of whether the alien seeking adjustment might already be classified as a legal permanent resident.") (citation omitted.)

The administrative record indicates the Immigration Judge suggested this option to petitioner and his counsel, counsel investigated the possibility, and concluded that, "[u]nfortunately, in this case we are not going to be able to make out those facts [n]ecessary to obtain relief under 8 U.S.C. § 1255." (Transcript of Removal Hearing, dated April 29, 1999, p. 15, attached to respondents' motion to dismiss [# 11] ).

tioner was not eligible for cancellation of removal, because he had not resided in the United States for a continuous period of seven years prior to committing the weapons offense. Petitioner, on the other hand, argued that, in calculating the period described in Section 1229b(a)(2), the IJ should not have used the date of the offense, but instead, should have used the date of his conviction, March 27, 1991, which would have resulted in a period of more than seven years. Petitioner further argued, that the IJ should not retroactively apply the "stop time" provision of Section 1229b(d)(1). However, the IJ, relying on a decision of the Board of Immigration Appeals, *In re Christobal Perez*, Int.Dec. 3389 (BIA May 12, 1999), held that, although petitioner's conviction occurred prior to the enactment of IIRIRA, "the relief of cancellation of removal is both discretionary and prospective in nature," and "therefore does not impair a substantive right to relief that was in place prior to its enactment." (*Id.*, p. 122). On appeal to the Board of Immigration Appeals ("BIA"), petitioner again argued that he should be eligible for Section 212(c) relief, or, in the alternative, for cancellation of removal, however, on October 27, 1999, the BIA affirmed the decision of the IJ and dismissed petitioner's appeal.

On November 9, 1999, the INS released petitioner on a $5,000.00 security bond. However, on November 29, 1999, the INS took petitioner back into custody, and since that time has detained him at the Buffalo Federal Detention Facility, to await deportation to Barbados. (*See*, Petitioner's Motion Requesting Release [# 19], p. 5). On August 16, 2000, the INS sent petitioner a "Decision to Continue Detention Following File Review," which stated, in relevant part:

Further review of your file indicates that you pose a significant threat to your former common-law spouse/girlfriend. You have previously threatened to kill this person and you were subsequently sentenced to a term of one year [sic] for violating an order of protection. This conviction combined with your previous conviction for possession of a loaded firearm in 1990 indicates that you remain a threat to the community.

We have seriously considered all options and possibilities regarding your case and have concluded that it is not likely that you will prevail in [court]. Previous appeals have not been decided in your favor. It does not appear to the Service that you would be [a] flight risk based upon the fact that you have previously appeared when required, however, you have not sufficiently proven to the Service that you would not pose a risk if released.

(Petitioner's Memo of Law [# 10], Exhibit A). On February 16, 2001, the INS sent petitioner a notice entitled "Decision to Continue Detention Following Interview," which again denied him release from custody. This notice contained the same reasoning as the August 16, 2000 notice, but further noted:

[T]he service will be able to obtain a travel document for your return to Barbados if your appeals are ultimately dismissed. You asked the Service to review previously submitted letters of support in consideration of your release. You failed to remember the address of the employer who has allegedly offered you a job upon your release. In addition, you failed to remember the last name of the same individual for whom you claim you worked prior to your incarceration. The Service does not consider this a viable job opportunity because of the lack of proper evidence.

(Attachment to Petitioner's Motion Requesting Release [# 15]). On July 26,

2001, the INS sent petitioner another notice, entitled "Decision to Continue Detention," which states:

> [Y]our custody status has been reviewed and it has been determined that you will not be released from the custody of the [INS] at this time.... It has further been determined that repatriation to Barbados is feasible upon completion of your legal proceedings. A travel document will be available upon request to the Government of Barbados and it is likely you will be removed in the foreseeable future. You may submit evidence to the contrary if you believe your removal is not possible in the foreseeable future.

(Attachment to Petitioner's Motion Requesting Release [# 19] ). It does not appear that petitioner has attempted to demonstrate that the INS would have any difficulty returning him to Barbados.

On April 19, 2000, petitioner, acting *pro se,* filed his habeas petition. The petition states, in relevant part:

> In the instant removal proceedings, the [INS] is relying upon 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and section 237(a)(2) and (a)(4) of the INA, as amended, as the basis for Petitioner's removal from the United States. It is submitted that applying these provisions enacted in 1996, after the date of the Petitioner's conviction in 1991 is unconstitutional. Accordingly, it is suggested, that Petitioner, Philip Worrell is eligible for 212(c) relief or Cancellation of Removal and that he should be allowed to submit an Application for Cancellation of Removal for Certain Legal Permanent Resident to this Court, and have this Court consider the application pursuant to the state of the law as it existed prior to the enactment of the [AEDPA] and Illegal Immigration Reform and Immi-

grant Responsibility Act ("IIRIRA") of 1996.

(Petition [# 1], p. 5). Petitioner has also submitted several motions requesting release from INS custody, on the grounds that the INS has not "meaningfully and impartially reviewed" his custody status are required by its own policies and procedures, and on the grounds that he has been held in excess of six months, which he contends violates the rule established by the U.S. Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

Respondents maintain that petitioner's claim regarding Section 212(c) must fail, since aliens convicted of illegal weapon possession are ineligible for such relief, and that he is not eligible for cancellation of removal, since he did not reside in the United States for seven years prior to the commission of the crime for which he is being deported. (Respondents' Motion to Dismiss [# 11], p. 1). As for his motions for release from custody, respondents indicate that petitioner is not being detained indefinitely within the meaning of *Zadvydas,* and that he will be quickly removed to Barbados upon the conclusion of this action and any subsequent appeal. Moreover, respondents maintain that the INS's decision to keep petitioner in custody is well-supported, in light of his weapon possession and contempt convictions and his threats against his former girlfriend.

The Court has thoroughly considered the parties' submissions and the entire administrative record.

## ANALYSIS

It is well settled that "[a] petition for habeas corpus may be used to challenge incarceration or orders of deportation as being 'in violation of the Constitution or laws or treaties of the United States.'" *Sol v. I.N.S.,* 274 F.3d 648, 651

(2d Cir.2001) (citing 28 U.S.C. § 2241(c)(3)), *pet. for cert. filed,* (Feb. 5, 2002) (No. 01–8465). The Court has subject matter jurisdiction over the matters raised herein. *See, I.N.S. v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2287, 150 L.Ed.2d 347 (2001).

## INA § 212(c), 8 U.S.C. § 1182(c)

■ At the outset, the Court finds that petitioner's Section 212(c) claim was properly denied. In *I.N.S. v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2293, 150 L.Ed.2d 347 (2001), the U.S. Supreme Court held "that § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements *and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.*" (Emphasis added). However, petitioner was not eligible for § 212(c) relief at the time he pled guilty to weapons possession. *See, Cato v. I.N.S.,* 84 F.3d 597, 602 (2d Cir.1996) (Noting that "an alien, deported on the ground of a weapons conviction, is ineligible for § 212(c) relief."). Therefore, respondents properly denied petitioner's request to make a § 212(c) application. *See, Cinquemani v. Ashcroft,* No. 00–CV–1460 (RJD), 2001 WL 939664 at *5 (E.D.N.Y. Aug.16, 2001) ("As an alien convicted of a weapons offense, [petitioner] was not eligible for INA § 212(c) relief at the time of his plea under the law then in effect."); *see also, Cyrus,* 2002 WL 377050 at *2 ("[Petitioner] was convicted on each of his two weapons-related offenses prior to the enactment of the 1996 Acts; however, [he] was statutorily ineligible for § 212(c) relief at the time of his convictions because he was an alien ordered deported following a weapons-related conviction.) (citations omitted).

Petitioner believes that he·was eligible for 212(c) notwithstanding his weapons possession conviction, and that the only reason he was denied such relief is that the INS: 1) applied the 1996 amendments retroactively; and 2) mistakenly characterized his conviction as an "aggravated felony." (*See,* Motion Requesting Release [# 15], p. 1: "[P]etitioner was not considered an aggravated felon when his crime occurred, and should not be considered an aggravated felon based on the 1996 Amendment to the Immigration Laws."; *see also,* Petitioner's Motion Requesting Release [# 18], p. 3; Petitioner's Motion Requesting Release [# 19], p. 3; Petitioner's Response [# 13], pp. 4, 7). As a result, petitioner's entire case is premised upon a mistaken assumption, since those are not the reasons he is ineligible for 212(c) relief. In fact, the Immigration Judge noted in his decision that petitioner had not been convicted of an aggravated felony. (*See,* Decision of Immigration Judge dated June 25, 1999, p. 4: "He has been a permanent resident since 1984 and his conviction is not a conviction for an aggravated felony."). Rather, as the Immigration Judge stated in that decision: "The respondent's conviction for possession of a weapon, which forms the basis for his deportability, does not contain any equivalent ground [listed in INA § 212(a)]. Therefore, Section 212(c) relief has *never been available* to cure deportability based upon criminal possession of a weapon." (emphasis added) *See also, Cato,* 84 F.3d at 599–600 (Noting that " § 212(c) relief is available to a deportee only if the ground for deportation has an analogous ground for exclusion listed in INA § 212(a), 8 U.S.C. § 1182(a)," and that "a weapons offense is not a ground of exclusion listed in § 212(a)").

## INA § 240A(a), 8 U.S.C. § 1229b(a)

The Court will now examine petitioner's claim under Section 1229b, which is two-fold. First, he contends that the stop-time

provision in 1229b(d)(1) should be interpreted to terminate the period of continuous residence only upon conviction, and not upon commission of the crime, which interpretation would make him eligible for cancellation of removal. Second, and alternatively, he contends that to the extent that he is found not eligible for cancellation of removal, for failure to meet the 7-year residency requirement, that Section 1229b(d)(1) is impermissibly retroactive and should not be applied to him, since it was enacted after the date he committed the crime.

■ As for petitioner's first argument, the Court finds that the BIA properly ruled that, pursuant to Section 1229b(d)(1), plaintiff's period of continuous residence terminated on the date he committed the crime. It is clear from the plain language of the statute that the stop-time is to occur "when the alien has *committed an offense* . . . that renders the alien . . . removable." 8 U.S.C. § 1229b(d)(1). The Court notes that Congress used the term "conviction" earlier in Section 1229b(a)(3), and clearly could have also used that term in Section 1229b(d)(1) if it had wanted to do so. Moreover, courts have applied Section 1229b(d)(1) according to its plain meaning. *See, e.g., Henry v. Ashcroft,* 175 F.Supp.2d 688, 696, n. 4 (S.D.N.Y.2001) ("The Government correctly points out that the statute stops accrual of continuous residence upon an alien's commission of a crime, and not upon an alien's conviction of a crime.") (citing 8 U.S.C. § 1229b(d)(1)).[3]

■ Turning then, to petitioner's second argument, the Court also finds that, as applied to petitioner, Section 1229b(d)(1) is not impermissibly retroactive. It is now well settled that, in determining whether or not a statutory provision is to be applied retroactively, the court must conduct a two-step analysis, by examining

> (1) whether Congress prescribed the statute's temporal reach and, if not, (2) . . . . whether retrospective application would have a "retroactive effect." If application of the statute to the conduct at issue would have a retroactive effect, "then, in keeping with our 'traditional presumption' against retroactivity, we presume that the statute does not apply to that conduct".

*St. Cyr v. I.N.S.,* 229 F.3d 406, 413 (2d Cir.2000), *affirmed,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citing *Landgraf v. USI Film Prod.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

Applying these principles, and having reviewed the statute, the Court finds, initially, that Congress did not clearly prescribe 8 U.S.C. § 1229b(d)(1)'s temporal reach, which conclusion is in line with other decisions which have considered the issue. *See, e.g., Henry,* 175 F.Supp.2d at 693–95 (accord). As for whether or not the statute has an impermissible retroactive effect, in *St. Cyr,* the Second Circuit Court of Appeals wrote that,

> we note that it is difficult to argue that barring eligibility for discretionary relief on the basis of pre-enactment criminal conduct—as opposed to a plea going to the guilt of a deportable crime—consti-

---

**3.** Although petitioner has not raised the issue, the Court also notes that the BIA and various circuit courts of appeal have interpreted 8 U.S.C. § 1229b(d)(1) as providing that, once the period of continuous residence terminates, it does not subsequently begin to run anew. *See, In re Mendoza–Sandino,* Int.Dec. (BIA) 3426, 2000 WL 225840 (BIA, February 23, 2000); *McBride v. I.N.S.,* 238 F.3d 371, 374–77 (5th Cir.2001); *Afolayan v. I.N.S.,* 219 F.3d 784, 788–89 (8th Cir.2000); *Najjar v. Ashcroft,* 257 F.3d 1262, 1299–1300 (11th Cir. 2001), reh'g and reh'g en banc denied, 275 F.3d 1085 (2001); *Ram v. I.N.S.,* 243 F.3d 510, 518 (9th Cir.2001).

tutes an impermissible retroactive application of a statute. Indeed, we agree that,

> It would border on the absurd to argue that these aliens might have decided not to commit ... crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.

*Jurado-Gutierrez*, 190 F.3d at 1150–51 (quoting *LaGuerre*, 164 F.3d at 1041). Thus, we conclude that the bar to discretionary relief applies regardless of whether a legal permanent alien's underlying *criminal conduct* pre-dated the AEDPA or IIRIRA.

*Id.*, 229 F.3d at 418 (emphasis added); *see also, Domond v. I.N.S.*, 244 F.3d 81, 86 (2d Cir.2001) (accord). Thus, although the Second Circuit noted that a "legal change that would have an impact on private parties' planning triggers the presumption against retroactivity," it dismissed the notion that the threat of losing the opportunity to request discretionary waiver of deportation would cause aliens to avoid committing crimes. *St. Cyr*, 229 F.3d at 418 (citation omitted). The Court finds the *St. Cyr* decision instructive in the instant case, since Section 1229b(d)(1)'s stop-time provision is triggered by an alien's criminal conduct, as opposed to his guilty plea. Accordingly, pursuant to *St. Cyr*, it is not plausible to assume that petitioner acted in reliance on the availability of 212(c) relief when he committed the crime of criminal possession of a weapon. For that matter, it is also clear that petitioner could not have relied on the availability of 212(c) relief when he pled guilty to the charge, since as discussed above, such relief was never available to an alien convicted of illegally possessing a weapon. Therefore, the enactment of 8 U.S.C. § 1229b(d)(1) did not put petitioner in a worse position.

The *Henry* decision, cited above, deals with the situation at issue here, specifically, "whether a provision of a statute enacted in 1996 limiting an alien's ability to seek relief from an order of removal can be applied, retroactively, to a crime committed more than [six] years before the statute took effect, where the removal proceedings were not commenced until several years after the statute took effect." *Henry*, 175 F.Supp.2d at 689. Significantly, in *Henry*, the petitioner was not convicted of weapons possession, but was convicted of petit larceny. Accordingly, and unlike petitioner in the instant case, at the time she pled guilty to petit larceny, the petitioner in *Henry* was eligible to seek a waiver of deportation pursuant to INA § 212(c). However, by the time the INS commenced removal proceedings against her, Section 212(c) had been replaced by 8 U.S.C. § 1229b, and she was ineligible for cancellation of removal because of Section 1229b(d)(1)'s stop-time provision. In considering whether 1229b(d)(1) should apply retroactively, the court in *Henry* conducted the *Landgraf* analysis, and as noted above, found, at the first step, that Congress had not indicated that it should apply retroactively. *Henry*, 175 F.Supp.2d at 693. At the second step of the *Landgraf* analysis, however, the court in *Henry* found, that as applied to the petitioner in that case, Section 1229b(d)(1) "ha[d] and improper retroactive effect. It attache[d] new legal consequences to events completed before its enactment, and it impair[ed] important rights possessed by petitioner at the time she acted and significantly increase[d] her liability for past conduct." *Id.* at 695. More specifically, the Court found that the petitioner likely pled guilty to the petit larceny charge in reliance

upon the availability of discretionary relief under INA § 212(c). The *Henry* decision further concludes that, "[r]egardless of whether she relied on her eligibility, it is the retroactive denial of an already accrued eligibility for discretionary relief that gives the clock stopping provision its impermissible retroactive effect." *Id.* at 696, n. 4. The *Henry* decision is therefore distinguishable from the instant case, since here, petitioner was never eligible for 212(c) relief. Based upon the law detailed above, the Court here finds that 8 U.S.C. § 1229b(d)(1) is not impermissibly retroactive as applied to petitioner, and accordingly, petitioner is not entitled to have his order of deportation vacated.

**Continued Detention**

Finally, petitioner contends that respondents have kept him in custody for an unreasonable period of time, in violation of *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), and without a proper showing of necessity, in violation of INS regulations. Neither argument has merit.

8 U.S.C. § 1231(a)(1)(A) provides that, "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period.')." However, § 1231(a)(6) provides that

[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision . . . .

*See, Zadvydas,* 121 S.Ct. at 2495. As the *Zadvydas* decision further noted:

Related Immigration and Naturalization Service (INS) regulations add that the INS District Director will initially review the alien's records to decide whether further detention or release under supervision is warranted after the 90–day removal period expires. 8 C.F.R. § 241.4(c)(1), (h), (k)(1)(i) (2001). If the decision is to detain, then an INS panel will review the matter further, at the expiration of a 3–month period or soon thereafter. § 241.4(k)(2)(ii). And the panel will decide, on the basis of records and a possible personal interview, between still further detention or release under supervision. § 241.4(i). In making this decision, the panel will consider, for example, the alien's disciplinary record, criminal record, mental health reports, evidence of rehabilitation, history of flight, prior immigration history, and favorable factors such as family ties. § 241.4(f). To authorize release, the panel must find that the alien is not likely to be violent, to pose a threat to the community, to flee if released, or to violate the conditions of release. § 241.4(e). And the alien must demonstrate "to the satisfaction of the Attorney General" that he will pose no danger or risk of flight. § 241.4(d)(1). If the panel decides against release, it must review the matter again within a year, and can review it earlier if conditions change. §§ 241.4(k)(2)(iii), (v).

121 S.Ct. at 2495.

In *Zadvydas,* the U.S. Supreme Court considered "whether [§ 1231(a)(6)] authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal". 121 S.Ct. at 2495. The Court ruled that § 1231(a)(6) contains "an implicit 'rea-

sonable time' limitation, the application of which is subject to federal court review." *Id.* More specifically, the Supreme Court noted that § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 2498. The *Zadvydas* decision dealt with two aliens against whom final orders of deportation were entered, but who the INS could not deport, since the countries to which the INS was attempting to deport the aliens refused to accept them. *Id.* at 2495-97. The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 2503. However, the Court further noted that "if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying the confinement within that reasonable removal period." *Id.* at 2504. The Supreme Court ended by holding that six months was a presumptively reasonable period of detention, and went on to state:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likeli-

hood of removal in the reasonably foreseeable future.

*Id.* at 2505.

■ Turning to the instant case, petitioner has not shown, or attempted to show, that there is any impediment to his removal to Barbados. Rather, it is undisputed that the only reason he has not been removed is that he has chosen to contest the final order of deportation. Thus, his reliance on the *Zadvydas* decision is misplaced. *See, Guner v. Reno,* No. 00 Civ. 8802(DC), 2001 WL 940576 at *2 (S.D.N.Y. Aug.20, 2001) (Finding *Zadvydas* inapplicable, because, "[i]t is [petitioner's efforts to challenge his deportation] that have prevented INS from deporting him, and there has been no showing that the Government will be unable to remove petitioner within a reasonable period of time after the completion of these proceedings.").

■ As for his request that he be released during the pendency of this action, the Court has inherent power to consider whether or not petitioner should be released on bail while his habeas petition is pending. *Mapp v. Reno,* 241 F.3d 221, 229 (2d Cir.2001). However, "this power is a limited one, to be exercised in special cases only." *Id.* at 226. To meet this "difficult standard," a petitioner must demonstrate two things: " 1) that the habeas petition raises substantial claims; and 2) that extraordinary circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Id.* As to the latter element, in *Mapp,* the Second Circuit Court of Appeals, in reversing the grant of bail, held that it was "by no means obvious" that a habeas petitioner seeking a 212(c) hearing would need to be released in order to make that remedy effective. *Id.* at 231 ("[T]he effectiveness of this form of relief is wholly independent of the question of whether [the petitioner] is incarcerated while the § 212(c) hearing

is pending."). Applying the foregoing principles, the Court notes, first, that petitioner's request to be released on bond is moot, since the Court is dismissing his petition. Second, petitioner's claim that the INS violated his due process rights by failing to make an "individualized assessment" of his request to be released pursuant to 8 C.F.R. § 241.4[4], is conclusory and unsupported. Rather, it is evident from the record that the INS did make an individualized assessment of his request, and its determination that plaintiff posed a risk of danger to the community is supported. Finally, petitioner has not demonstrated that he would need to be released in order to make effective the remedy he is seeking. *See, Halley v. Ashcroft,* 148 F.Supp.2d 234, 236 (E.D.N.Y.2001) (Denying bail application, and noting, "petitioner has not demonstrated why the grant of bail is necessary to make the discretionary Section 212(c) hearing, which guarantees neither his release from detention nor vacatur of the INS's order of removal, effective.") (citing *Mapp,* 241 F.3d at 230–31). Accordingly, petitioner's motions for release from INS custody are denied.

## CONCLUSION

For all of the foregoing reasons, respondents' motion to dismiss is granted, petitioner's motions are denied, and the petition is dismissed.

IT IS SO ORDERED.

---

4. *See,* Petitioner's Motion Requesting Release [# 19], pp. 4–5.