*597
 
 OPINION
 

 WILLIAM A. FLETCHER, Circuit Judge.
 

 Alma Delia Jimenez-Angeles entered the United States illegally from Mexico on March 6, 1990. Sometime in March 1997, prior to the April 1, 1997 effective date of the Illegal Immigration Reform and Immigrant Responsibility Act, PL 104-208 Div. C, 110 Stat. 3009 (1996) (“IIRIRA”), she presented herself to the Immigration and Naturalization Service (“INS”) hoping to avail herself of the pre-IIRIRA remedy of suspension of deportation. If the INS had commenced deportation proceedings prior to April 1, 1997, she would have been eligible for suspension of deportation. Instead, the INS did not commence proceedings (now called “removal” proceedings under IIRIRA) against her until November 1998. An Immigration Judge (“U”) found Jimenez-Angeles removable, and the Board of Immigration Appeals (“BIA”) affirmed the order. Jimenez-Angeles now petitions this court for review. Because we hold that Jimenez-Angeles’ case is governed by IIRIRA’s permanent rules, and because we hold that those rules are not impermissibly retroactive when applied to her, we deny the petition.
 

 I
 

 After entering the United States illegally, Jimenez-Angeles and her husband settled in the Los Angeles area. They have obtained jobs and have had two children while living in the United States. As of March 6, 1997, Jimenez-Angeles had been continuously present in this country for seven years. In March 1997, after she reached the seven-year residency mark, she presented herself to the INS to admit her undocumented status and to attempt to begin a process that would permit her to apply for the discretionary relief of suspension of deportation.
 

 Before IIRIRA took effect on April 1, 1997, an alien against whom deportation proceedings had been commenced could apply for suspension of deportation, provided she had been continuously physically present in the United States for seven years, had good moral character, and could show that deportation would work a severe hardship upon her or upon certain United States citizen relatives.
 
 See 8
 
 U.S.C. § 1254 (repealed 1997). When IIRIRA took effect on April 1, 1997, shortly after Jimenez-Angeles presented herself to the INS, “deportation” was replaced by “removal,” and “suspension of deportation” was replaced by “cancellation of removal.”
 
 See
 
 8 U.S.C. § 1229b(b). Cancellation of removal requires ten years of continuous presence (rather than seven) and requires the alien to show that her removal would work a hardship upon a qualifying United States citizen or legal permanent resident spouse, child or parent (rather than upon the alien herself).
 
 Id
 

 IIRIRA includes transitional rules providing that, for the most part, the new provisions of IIRIRA do not apply to aliens against whom deportation proceedings were commenced prior to its effective date. Therefore, an alien may apply for the pre-IIRIRA remedy of suspension of deportation if deportation proceedings against her were commenced before April 1, 1997.
 
 See
 
 IIRIRA § 309(c);
 
 Castillo-Perez v. INS,
 
 212 F.3d 518, 523 (9th Cir. 2000). However, if an alien’s case is commenced after April 1, 1997, it appears to be controlled by the new, permanent provisions of IIRIRA, including the ten-year residency requirement for cancellation of removal.
 
 Castillo-Perez,
 
 212 F.3d at 523. Under pre-IIRIRA law, a deportation proceeding was commenced when the INS filed (not merely served) an Order to Show Cause (“OSC”). Under IIRIRA, a remov
 
 *598
 
 al proceeding is commenced when the INS files a Notice to Appear (“NTA”).
 

 Prior to IIRIRA, an alien in deportation proceedings continued to accrue time towards satisfying the seven-year residency requirement for suspension of deportation during the pendency of the proceedings. However, IIRIRA includes a “stop-clock” provision. Under this provision, once an alien is served with an NTA, the alien ceases to accrue time towards the residency requirement.
 
 See
 
 IIRIRA § 304; 8 U.S.C. § 1229b(d). The stop-clock provision applies to all deportation and removal proceedings, whether they are governed by the transitional rules or the permanent rules,
 
 see
 
 IIRIRA § 309(c)(5)(A);
 
 Ram v. INS,
 
 243 F.3d 510, 516 (9th Cir.2001), unless the alien is covered by the Nicaraguan Adjustment and Central American Relief Act of 1997, PL 105-100, 111- Stat. 2160 (1997) (NACARA). NACARA exempts aliens from certain specified countries from the stop-clock provision, but Mexico is not one of those countries.
 

 The INS took no action on Jimenez-Angeles’ case until late in 1998. Jimenez-Angeles was served with an NTA, and the clock was stopped, on October 15, 1998. When the NTA was served and the clock stopped, Jimenez-Angeles had been continuously present in the United States for approximately eight and one-half years. The NTA was filed, and removal proceedings commenced, in November 1998.
 

 An IJ found Jimenez-Angeles removable on June 10,1999, and found her ineligible for either the pre-IIRIRA remedy of suspension of deportation or the IIRIRA remedy of cancellation of removal. The IJ first held that Jimenez-Angeles’ case did not commence when she appeared at the INS office in March 1997. Rather, her case commenced only when the NTA was filed in November 1998, after the effective date of IIRIRA. Because it commenced after IIRIRA’s effective date, it was a removal rather than a deportation proceeding. Thus, according to the IJ, Jimenez-Angeles was ineligible for the pre-IIRIRA remedy of suspension of deportation. Next, applying the stop-clock provision, the IJ held that Jimenez-Angeles had accrued less than ten years of continuous residency when the NTA was served, and so she was ineligible for the IIRIRA remedy of cancellation of removal. The BIA upheld the order and granted Jimenez-Angeles voluntary departure.
 

 Jimenez-Angeles petitions this court for review. She points out that if the INS had commenced proceedings against her by filing an OSC immediately after she turned herself in to the INS in March 1997, those proceedings would have been pre-IIRIRA deportation proceedings, and she would have been eligible for suspension of deportation. She argues, first, that the INS should have commenced deportation proceedings immediately. She argues, second, that application of IIRIRA’s permanent rules to her is impermissibly retroactive in light of
 
 INS v. St. Cyr,
 
 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), arguing that
 
 St Cyr
 
 has in effect overruled our earlier decision in
 
 Cortez-Felipe v. INS,
 
 245 F.3d 1054 (9th Cir.2001) (holding that deportation proceedings did not commence before IIRIRA’s effective date, and the transitional rules therefore did not apply, where OSC was served but not filed prior to IIRIRA’s effective date). We lack jurisdiction to address Jimenez-Angeles’ first argument. We have jurisdiction to address her second argument, which we reject on the merits.
 

 n
 

 We hold at the outset that we lack jurisdiction to address Jimenez-Angeles’ argument that the INS should have com
 
 *599
 
 menced deportation proceedings against her immediately upon becoming aware of her illegal presence in the United States. IIRIRA provides in part, “no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien 7503 arising from the decision or action by the Attorney General to
 
 commence proceedings,
 
 adjudicate cases, or execute removal orders against any alien under this chapter.” 8 U.S.C. § 1252(g) (emphasis added). Section 1252(g) is not subject to IIRIRA’s transitional rules; it applies “without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings” under the Act. IIRIRA § 306(c)(1).
 
 See also Reno v. American-Arab Anti-Discrimination Committee (“AADC”),
 
 525 U.S. 471, 477, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). We construe § 1252(g), which removes our jurisdiction over “decisions] ... to commence proceedings” to include not only a decision in an individual case
 
 whether
 
 to commence, but also
 
 when
 
 to commence, a proceeding.
 
 See Richards-Diaz v. Fasano,
 
 233 F.3d 1160, 1165 (9th Cir.2000) (“We are in no position to review the timing of the Attorney General’s decision to ‘commence proceedings.’ ”),
 
 vacated on other grounds by Fasano v. Richards-Diaz,
 
 533 U.S. 945, 121 S.Ct. 2584, 150 L.Ed.2d 745 (2001). Thus, § 1252(g) removes our jurisdiction to decide Jimenez-Angeles’ individual claim that the INS was obligated immediately to initiate deportation proceedings against her once she had presented herself to the INS.
 
 See AADC,
 
 525 U.S. at 487, 119 S.Ct. 936 (A “challenge to the Attorney General’s decision to ‘commence proceedings’ ... falls squarely within § 1252(g).”).
 
 See also Cortez-Felipe,
 
 245 F.3d at 1057 (“ ‘[T]he Attorney General retains discretion at the stage of deciding to initiate a deportation proceeding.’ ”) (quoting
 
 Caba-sug v. INS,
 
 847 F.2d 1321, 1324 (9th Cir.1988)).
 

 Ill
 

 A
 

 We do have jurisdiction, however, to address Jimenez-Angeles’ argument that the application of IIRIRA’s permanent rules to her is impermissibly retroactive. Section 1252(g)’s jurisdictional bar is to be construed narrowly.
 
 See AADC,
 
 525 U.S. at 487, 119 S.Ct. 936. We are not precluded, for example, from ruling on constitutional challenges to deportation procedures.
 
 See Walters v. Reno,
 
 145 F.3d 1032, 1052 (9th Cir.1998) (“By its terms, [§ 1252(g)] does not prevent the district court from exercising jurisdiction over the plaintiffs’ due process claims [because such claims] constitute ‘general collateral challenges to unconstitutional practices and policies used by the agency.’ ”) (quoting
 
 McNary v. Haitian Refugee Ctr., Inc.,
 
 498 U.S. 479, 492, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991));
 
 see also Barahona-Gomez v. Reno,
 
 236 F.3d 1115, 1121 (9th Cir.2001) (holding § 1252(g) did not bar aliens’ challenge to INS deportation procedures);
 
 Catholic Social Servs. v. INS,
 
 232 F.3d 1139, 1150 (9th Cir.2000) (en banc) (same).
 

 We thus retain jurisdiction to address Jimenez-Angeles’ claim that application of IIRIRA’s permanent rules to her case is impermissibly retroactive in light of
 
 INS v. St. Cyr,
 
 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Indeed,
 
 St. Cyr
 
 specifically noted that § 1252(g) did not reach the retroactivity challenge brought by the alien in that case.
 
 See id.
 
 at 311 n. 34, 121 S.Ct. 2271 (“[section 1252(g) ] is not relevant to our analysis”). We review
 
 de novo
 
 Jimenez-Angeles’ presentation of “ ‘an abstract legal question concerning the effect, if any,”’ of the
 
 *600
 
 INS’s failure to commence deportation proceedings prior to the effective date of IIRIRA.
 
 Cortez-Felipe,
 
 245 F.3d at 1056 (quoting
 
 Costa v. INS,
 
 233 F.3d 31, 34 (1st Cir.2000)).
 

 B
 

 Jimenez-Angeles argues that because she presented herself to the INS prior to IIRIRA’s effective date, her case should be governed by IIRIRA’s transitional rules, rather than its permanent rules. Application of the transitional rules would make her deportable rather than removable and would thus render her eligible for suspension of deportation. In support of her argument, Jimenez-Angeles contends that application of the permanent rules is impermissibly retroactive in light of the Supreme Court’s holding in
 
 St. Cyr.
 
 We disagree.
 

 Like pre-IIRIRA deportation proceedings, removal proceedings under IIR-IRA do not commence upon the initial contact between the alien and the INS. Rather, they commence when the INS files a “charging document” with the Immigration Court, either an OSC (pre-IIRI-RA) or an NTA (IIRIRA). IIRIRA § 304; 8 U.S.C. § 1229. Under the express terms of the pre-IIRIRA regulations, “[e]very proceeding to determine the deportability of an alien in the United States
 
 is commenced by the filing
 
 of an order to show cause with the Office of the Immigration Judge.” 8 C.F.R. § 242.1(a) (1997) (repealed) (emphasis added).
 
 See also
 
 8 C.F.R. § 3.14(a) (2002). Under IIR-IRA regulations, “[e]very removal proceeding conducted under section 240 of the Act to determine the deportability or inadmissibility of an alien
 
 is commenced by the filing
 
 of a notice to appear with the Immigration Court.” 8 C.F.R. § 239.1(a) (2002) (emphasis added). Jimenez-Ange-les revealed herself to the INS in March 1997, but the INS did not file a charging document with the Immigration Court until November 1998, well after IIRIRA’s effective date. Deportation proceedings thus did not commence prior to April 1, 1997. Jimenez-Angeles is therefore covered by IIRIRA’s permanent rather than transitional rules, unless under the Supreme Court’s reasoning in
 
 St. Cyr
 
 those rules have an impermissibly retroactive effect when applied to her.
 

 C
 

 Jimenez-Angeles argues that she is like the alien in
 
 St. Cyr,
 
 who pled guilty prior to IIRIRA’s effective date “in reb-anee on the possibility of § 212(c) [suspension of deportation] relief,” 533 U.S. at 315, 121 S.Ct. 2271, in that she revealed her status to the INS prior to April 1, 1997 in rebanee on the availability of suspension of deportation. The alien in
 
 St. Cyr
 
 was a lawful permanent resident who, more than seven years after entry into the United States, pled guilty to a felony pursuant to a plea bargain. His guilty plea rendered him deportable, but under then-current, pre-IIRIRA law he was eligible for suspension of deportation under INA § 212(c), 8 U.S.C. § 1182(c) (repealed).
 
 [1]
 
 Deportation proceedings were never commenced against St. Cyr, however. Rather, on Aprb 10, 1997, ten days after IIRIRA’s effective date, removal proceedings were commenced against him. The Supreme Court held that IIRIRA’s elimination of suspension of deportation could not be retroactively applied to aliens bke St. Cyr “whose convictions were obtained through
 
 *601
 
 plea agreements and who, notwithstanding those convictions, would have been eligible for [suspension of deportation] at the time of their plea under the law then in effect.”
 
 Id.
 
 at 326, 121 S.Ct. 2271.
 

 In determining that application of IIRI-RA to St. Cyr was impermissibly retroactive, the Court invoked the two-part analysis of
 
 Landgraf v. USI Film Products,
 
 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Applying the
 
 Landgraf
 
 test as explained in
 
 St. Cyr,
 
 we conclude that, because the circumstances of Jimenez-An-geles’ case vary significantly from those in
 
 St. Cyr,
 
 application of IIRIRA’s permanent rules to her is not impermissibly retroactive.
 

 The first step in the retroactivity analysis under
 
 Landgraf
 
 is “to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively.”
 
 St. Cyr,
 
 533 U.S. at 316, 121 S.Ct. 2271. The statutory language must be “ ‘so clear that it could sustain only one interpretation.’ ”
 
 Id.
 
 at 317, 121 S.Ct. 2271 (quoting
 
 Lindh v. Murphy,
 
 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). If the language of a statute contains no “express command” describing its “proper reach,” then we proceed to step two and determine whether application of the provision in question would have a retroactive effect within the meaning of
 
 Landgraf. See Landgraf,
 
 511 U.S. at 280, 114 S.Ct. 1483. A retroactive effect, as defined in
 
 Landgraf,
 
 is one that “would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.”
 
 Id.
 
 If a provision would have a retroactive effect, it should not be applied.
 
 See id.
 

 Based on this approach, the Court in
 
 St. Cyr
 
 first rejected the INS’s argument that IIRIRA’s repeal of § 212(c) set forth 7507 its “proper reach” with the requisite level of clarity. The Court rejected the INS’s argument that the “comprehensive nature” of IIRIRA’s revision of immigration law shows that Congress intended that, after a transition period, the provisions of the old law should no longer be applied at all. 533 U.S. at 317, 121 S.Ct. 2271. The Court also rejected the INS’s argument that the effective date of IIRIRA,
 
 see
 
 § 309(a), provided a clear statement of congressional intent to apply IIRIRA’s repeal of discretionary relief retroactively.
 
 Id.
 
 (“[T]he mere promulgation of an effective date for a statute does not provide sufficient assurance that Congress specifically considered the potential unfairness that retroactive application would produce.”). Finally, the Court rejected the INS’s argument that the “saving provision” in IIRIRA’s transitional rules, § 309(c)(1), eliminates ambiguity by providing that the old rules apply for proceedings commenced before April 1, 1997.
 
 Id.
 
 at 320, 121 S.Ct. 2271. The Court interpreted § 309(c)(1) as merely providing for the “transition to new
 
 procedures
 
 in the case of an alien already in exclusion or deportation proceedings on the effective date.”
 
 Id.
 
 at 318, 121 S.Ct. 2271 (quoting H.R. Conf. Rep. No. 104-828, p. 222 (1996)) (emphasis in
 
 St.
 
 Cyr).
 

 We hold similarly in this case that IIIR-IRA does not state with sufficient clarity that its repeal of § 1254 suspension of deportation relief is intended to apply to an alien in Jimenez-Angeles’ position, such that it must be applied even if its operation is retroactive. Like the section of IIRIRA repealing § 212(c) suspension of deportation relief, the statutory provision stating merely, “strike section 244 (8 U.S.C. 1254)” does not “expressly prescribe [its ] proper reach.”
 
 Landgraf,
 
 511 U.S. at 280, 114 S.Ct. 1483. Because the statute does not clearly state that it is to be applied retroactively, we proceed to the second step of the
 
 Landgraf
 
 analysis.
 

 
 *602
 
 To prevail under the second step, Jimenez-Angeles must show that the repeal of suspension of deportation has a retroactive effect on her. The Court in
 
 St. Cyr
 
 noted that in determining “whether a particular statute acts retroactively, 7508 [the Court] should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.”
 
 Id.
 
 at 321, 121 S.Ct. 2271 (internal quotations omitted). Specifically, the Court considered the plea bargain into which St. Cyr had entered, and asked whether the application of 'IIRIRA “ ‘attaches a new disability, in respect to transactions or considerations already past.’ ”
 
 Id.
 
 (quoting
 
 Landgraf,
 
 511 U.S. at 269, 114 S.Ct. 1483).
 

 The Court held that the INS was barred from applying the repeal of § 212(c) to St. Cyr because the plea bargain had been predicated on the assumption that St. Cyr would be eligible for suspension of deportation.
 
 See id.
 
 (“Plea agreements involve a
 
 quid pro quo
 
 between a criminal defendant and the government.”). Having engaged in a bargaining process with the government in which he “waive[d] several of [his] constitutional rights (including the right to a trial) and grant[ed] the government numerous ‘tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources,’ ”
 
 id.
 
 at 322, 121 S.Ct. 2271 (quoting
 
 Newton v. Rumery,
 
 480 U.S. 386, 393 n. 3, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987)), St. Cyr reasonably relied on the fact that his plea would preserve his eligibility for suspension of deportation. He had a settled expectation that suspension of deportation would continue to be available to him, and also reasonably believed that there was a substantial chance that his application for such relief would be granted, given the high percentage of successful applicants for suspension of deportation.
 
 See id.
 

 The factors that militated in favor of St. Cyr — in particular, his “settled expectations” based on “transactions or considerations already past” — are not present in Jimenez-Angeles’ case. When St. Cyr entered into his plea bargain, he gave up valuable legal rights, including his right to trial by jury. By contrast, when Jimenez-Angeles revealed herself to the INS, she gave up only her ability to continue living illegally and undetected in the United States. Further, although Jimenez-Ange-les may have had an expectation (or at least a hope) that suspension of deportation would be available to her 7509 when she turned herself in voluntarily less than one month before IIRIRA’s effective date, that expectation (or hope) was not equivalent to the settled expectation St. Cyr gained by entering into his plea bargain before that date. Finally, although the government did gain something of value when Jimenez-Angeles came forward — for example, in saving resources it might otherwise have expended in tracking her down — we do not believe that this is the sort of exchange contemplated by the Court in
 
 St. Cyr.
 
 A plea bargain is a formal exchange in which each side consensually gives, and gets, something of value. In Jimenez-Angeles’ case, there was no such exchange.
 

 We therefore conclude that the application of the permanent rules of IIRIRA to Jimenez-Angeles is not impermissibly retroactive under the reasoning of
 
 Landgraf
 
 and
 
 St. Cyr.
 
 As applied to the facts of Jimenez-Angeles’ case, our decision in
 
 Coftez-Felipe
 
 thus remains good law.
 

 IV
 

 Jimenez-Angeles also challenges the constitutionality of NACARA. She argues that because NACARA gives favorable treatment to aliens from some countries but not from others, including Mexico, it violates the equal protection component of the Due Process Clause of the Fifth Amendment. We have previous
 
 *603
 
 ly rejected this argument. “ ‘[L]ine-draw-ing’ decisions made by Congress or the President in the context of immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose.”
 
 Ram v. INS,
 
 243 F.3d 510, 517 (9th Cir.2001). We held in
 
 Ram
 
 that NACARA easily satisfies the rational basis test, because NACARA is intended to favor aliens who had either “taken unusual risks in escaping from oppressive governments” or “whose countries had been profoundly ravaged by war.”
 
 Id.
 
 (quoting 143 Cong. Rec. S12258-01 at *S12261-62). Congress’s decision to afford more favorable treatment to certain aliens “stems from a rational diplomatic decision to encourage such aliens to remain in the United States.”
 
 Id.See also Angel-Ramos v. Reno,
 
 227 F.3d 942, 948-49 (7th Cir.2000);
 
 Afolayan v. INS,
 
 219 F.3d 784, 789 (8th Cir.2000);
 
 Appiah v. INS,
 
 202 F.3d 704, 710 (4th Cir.2000);
 
 Tefel v. Reno,
 
 180 F.3d 1286, 1299 (11th Cir.1999).
 

 PETITION DENIED.
 

 [1]
 

 . Section 212(c) provided the same relief as the suspension of deporta tion sought by Jimenez-Angeles under § 1254, but § 212(c) applied to criminal aliens who were lawful permanent residents.