**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL VALENCIA-ALVAREZ,
                    *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,

                    *Respondent.*

No. 05-70275

Agency No.
A42-909-915

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 7, 2006—Seattle, Washington

Filed December 6, 2006

Before: David R. Thompson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## COUNSEL

Bernice Funk, Seattle, Washington, for the petitioner.

Peter D. Keisler, David V. Bernal, Russell J.E. Verby, Cindy S. Ferrier, Department of Justice, Washington, D.C., for the respondent.

**OPINION**

CALLAHAN, Circuit Judge:

Petitioner, Daniel Valencia-Alvarez, a native and citizen of Mexico, seeks relief from the Board of Immigration Appeals' determinations that he was removable for having been convicted of a controlled substance offense and that he was ineligible for cancellation of removal because his continuous presence in the United States "stopped" at the time he committed the offense. On appeal, Valencia-Alvarez basically advances two arguments. First, he contends that respondent was barred by res judicata from asserting additional charges after the Board of Immigration Appeals ("BIA") held that his underlying conviction was not an aggravated felony. Second, Valencia-Alvarez argues that the provision of 8 U.S.C. § 1229b(d)(1), enacted as part of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, which "stops" an alien's accrual of continuous presence in the United States at the time that he commits a crime (sometimes referred to as the "committed an offense" provision), may not be applied retroactively to his 1996 offense. We reject the first argument because the BIA's 2002 decision was not a final judgment rendered on the merits in a separate action. We reject the second argument because the retroactive application of the "committed an offense" provision to Valencia-Alvarez does not impair any right he possessed when he committed the offense, or when IIRIRA was enacted. Accordingly, the petition for review is denied.

I

Valencia-Alvarez was admitted to the United States on July 4, 1991, and is a lawful permanent resident. On May 9, 1997, he was convicted of a drug offense involving heroin, in violation of § 11352 of California's Health and Safety Code.

Valencia-Alvarez's criminal activity took place on December 9, 1996. He received a three-year sentence.

On July 29, 1998, the Immigration and Naturalization Service[1] (the Service) charged Valencia-Alvarez with being removable for having been convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43). On December 18, 1998, the Immigration Judge (IJ) issued a decision finding that Valencia-Alvarez had been convicted of an aggravated felony. Valencia-Alvarez appealed to the BIA. On August 6, 2002, the BIA found the record insufficient to support the IJ's conclusion that Valencia-Alvarez's conviction was for an aggravated felony and remanded to the IJ for further proceedings.

Three days later, the IJ issued an order noting that regardless of whether Valencia-Alvarez's conviction was for an aggravated felony, he might be removable because his conviction was for a controlled substance offense. The Service was advised that if it intended to file additional charges, it should do so promptly. On August 13, 2002, the Service filed additional charges alleging, *inter alia*, that Valencia-Alvarez was removable for having been convicted of an offense relating to a controlled substance in violation of 8 U.S.C. § 1227(a)(2)(B)(i). On September 5, 2002, the IJ issued a decision holding that under Ninth Circuit law, Valencia-Alvarez's conviction was neither an aggravated felony nor "a drug-related removable offense."

This time the Service appealed to the BIA. In its March 25, 2004 decision, the BIA rejected Valencia-Alvarez's argument that the Service was barred from lodging additional charges,[2]

---

[1]Pursuant to the Department of Homeland Security Reorganization Plan, as of March 1, 2003, the Service was abolished and its functions were transferred to the Department of Homeland Security. *See* 6 U.S.C. § 542.

[2]The BIA noted:

and agreed with the IJ that the conviction was not for an aggravated felony. The BIA, however, held that Valencia-Alvarez was removable under § 1227(a)(2)(B)(i) because his conviction was related to a controlled substance. The BIA remanded the case to the IJ "to determine [Valencia-Alvarez's] eligibility for any form of relief from removal."

On remand, the IJ noted that this was the third time Valencia-Alvarez had been before him. The IJ observed that he was not in a position to review the BIA's determination that Valencia-Alvarez's conviction was a crime involving a controlled substance. Rather, he addressed whether Valencia-Alvarez had a "stop time" problem with meeting the seven-year continuous residency requirement for cancellation of removal eligibility.

The crucial criterion for Valencia-Alvarez's eligibility for cancellation of removal under 8 U.S.C. § 1229b(a) was whether he had seven years of continuous residency in the United States.[3] The IJ determined that he did not have the requisite continuous residency in the United States because, pursuant to 8 U.S.C. § 1229b(d)(1)(B), his residency had "stopped" when he committed the offense.[4] The IJ also

---

We find no merit to [Valencia-Alvarez's] contention that the [Department of Homeland Security] may not lodge additional charges. Federal regulations provide that additional or substituted charges of removability may be lodged by the [Department of Homeland Security] in writing at any time during the removal proceedings. 8 C.F.R. § 1003.30.

[3]Section 1229b(a) provides that the Attorney General may cancel removal of an alien who has been lawfully admitted for permanent residence for not less than five years, has resided in the United States continuously for seven years, and has not been convicted of any aggravated felony. Valencia-Alvarez had been lawfully admitted for more than five years and the BIA had determined that his conviction was not for an aggravated felony.

[4]Section 1229b(d)(1) reads:

rejected Valencia-Alvarez's argument that "because he was not placed in removal proceedings until 1998, the stop-time principle should not be applied to him." Finally, the IJ noted that even if Valencia-Alvarez could somehow qualify for pre-IIRIRA suspension of deportation, he would then face the barrier of old INA section 241(a)(2) [8 U.S.C. § 1254 (repealed by IIRIRA § 308(b)(7))], which required "continuous presence of not less than 10 years immediately following the commission of the act." The IJ ordered Valencia-Alvarez's removal to Mexico.

Valencia-Alvarez appealed to the BIA, which affirmed the IJ's decision without an opinion. He then filed a timely petition for review with this court.

## II

Pursuant to 8 U.S.C. § 1252(a)(2)(C), we have jurisdiction to review constitutional claims and claims of law raised in a timely petition for review. We agree with the parties that we have jurisdiction to consider the statutory and legal issues raised by petitioner in this case.[5] Because the BIA affirmed the IJ's decision without an opinion, we review the IJ's opin-

---

For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to (end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2) of this section, when the alien is served a notice to appear under section 1229(a) of this title, or (B) *when the alien has committed an offense* referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

(Emphasis added).

[5] On appeal, Valencia-Alvarez does not challenge the factual determination that his underlying conviction involved a controlled substance.

ion as the final agency decision. *Circu v. Gonzales*, 450 F.3d 990, 993 (9th Cir. 2006) (en banc).

As an initial matter, we reject Valencia-Alvarez's objections to the BIA's "streamlining" of his appeal. In *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 848 (9th Cir. 2003), we held that "streamlining does not violate an alien's due process rights." Furthermore, Valencia-Alvarez has not shown that we cannot adequately determine the BIA's reasons for denying him relief, *Lanza v. Ashcroft*, 389 F.3d 917, 932 (9th Cir. 2004), or that this is an instance in which the BIA abused its own regulations in streamlining the appeal. *Chong Shin Chen v. Ashcroft*, 378 F.3d 1081, 1087 (9th Cir. 2004).

## III

Valencia-Alvarez, relying heavily on a district court decision, *Murray v. Ashcroft*, 321 F. Supp. 2d 385 (D. Conn. 2004), argues that the doctrine of res judicata barred the government from filing additional charges against him following the BIA's August 6, 2002 opinion. In essence, he contends that the August 6, 2002 opinion was a final decision and that thereafter res judicata barred respondent from bringing any charges against him that could have been included with the initial charges.[6]

---

[6]Res judicata or claim preclusion bars a subsequent action "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1877); *see* 18 JAMES WM. MOORE ET AL., *MOORE'S FEDERAL PRACTICE* § 131.01 (3d ed. 2006). Claim preclusion is sometimes confused with issue preclusion, which bars a subsequent action on an issue that was actually and necessarily determined in the first action. *See* 18 JAMES WM. MOORE ET AL., *MOORE'S FEDERAL PRACTICE* § 132.01[1] (3d ed. 2006). Valencia-Alvarez asserts claim preclusion, not issue preclusion, as it is clear that the BIA's decision did not actually and necessarily determine whether the underlying conviction concerned a controlled substance.

**[1]** The criteria for the application of res judicata, which are not fully set forth in *Murray*, are that there be a *final* judgment, rendered *on the merits in a separate action. See* 18 JAMES WM. MOORE ET AL., *MOORE'S FEDERAL PRACTICE*, §§ 131.30[2]- [3], 131.31[1] (3d ed. 2006); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 (1981) (noting that the Ninth Circuit had recognized that the " 'technical elements' of res judicata had been satisfied, namely, that the decision . . . [is] a final judgment on the merits and involved the same claims and the same parties as [the second case]").

**[2]** None of these criteria is met here. First, the BIA's August 6, 2002 opinion sustaining Valencia-Alvarez's appeal was not a final judgment. It concluded with the statement "the record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion and for the entry of a new decision." Second, the opinion was not a dispositive decision on the merits as it states:

> Given the change of law in the Ninth Circuit, and the ambiguity of the conviction documents, a remand is warranted for further evidence -regarding the respondent's conviction and whether he is removable as charged.

The lack of a final disposition is reflected in the fact that the parties continued to litigate the matter. On remand, the IJ held that Valencia-Alvarez's conviction was neither an aggravated felony nor a drug-related offense. On appeal, the BIA affirmed that the conviction was not an aggravated felony, but held that the conviction was related to a controlled substance. Third, Valencia-Alvarez's first appeal to the BIA was not a separate action. Rather, the BIA's August 6, 2002 opinion was the first of three BIA decisions in this single case, which is now before us. Thus, the BIA's 2002 opinion did not bar the Service from bringing additional charges against

Valencia-Alvarez because that opinion was not a final decision on the merits in a separate action.[7]

## IV

**[3]** Prior to IIRIRA's effective date, April 1, 1997, an alien in deportation proceedings continued to accrue time toward satisfying the seven-year residency requirement for suspension of deportation during the pendency of his or her immigration proceedings. *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 598 (9th Cir. 2002). IIRIRA eliminated suspension of deportation and replaced it "with a similar (though somewhat more burdensome) kind of relief known as 'cancellation of removal.' " *Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 851 (9th Cir. 2006). IIRIRA, however, also contained a "stop-clock" provision which provides that an alien ceases to accrue time toward the residency requirement when (A) the alien is served with a notice to appear, or (B) when the alien commits one of a number of criminal offenses.[8] 8 U.S.C. § 1229b(d)(1). In *Jimenez-Angeles*, we determined that the retroactive application of the "notice to appear" provision, § 1229b(d)(1)(A), was permissible. *Id.* at 602. Here, we consider the retroactive application of the "committed an offense" provision, § 1229b(d)(1)(B).

---

[7]In light of this conclusion, we need not determine whether the BIA's 2002 opinion, if final, would have barred the Service from asserting additional issues. We note, however, that we have indicated that in the administrative law context, "the principles of collateral estoppel and res judicata are applied flexibly." *Artukovic v. INS*, 693 F.2d 894, 898 (9th Cir. 1982); *see also Ramon-Sepulveda v. INS*, 863 F.2d 1458, 1460 (9th Cir. 1988) (noting that res judicata is applied flexibly in the administrative sphere, but requiring that the agency's position must be substantially justified).

[8]Pursuant to 8 U.S.C. § 1229b(d)(1) an alien's accrual of continuous presence ceases when the alien commits an offense "referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title[.]" 8 U.S.C. § 1182(a)(2)(A)(i)(II) specifies that an alien is inadmissible if he or she commits a violation "relating to a controlled substance[.]" Valencia-Alvarez does not deny that his offense is one that is covered by §§ 1182(a)(2) and 1229b(d)(1).

The Supreme Court has noted that "[d]espite the dangers inherent in retroactive legislation, it is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect." *INS v. St. Cyr*, 533 U.S. 289, 316 (2001). In *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994), the Supreme Court set forth a two-step approach to evaluating the retroactive application of a statute. The Court recently reiterated this approach in *Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422 (2006):

> This Court has worked out a sequence of analysis when an objection is made to applying a particular statute said to affect a vested right or to impose some burden on the basis of an act or event preceding the statute's enactment. We first look to "whether Congress has expressly prescribed the statute's proper reach," *Landgraf, supra,* at 280, . . . and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying "our normal rules of construction," *Lindh v. Murphy,* 521 U.S. 320, 326 . . . (1997). If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of "affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment," *Landgraf, supra,* at 278, . . . see also *Lindh*, *supra*, at 326[.]

*Id*. at 2428 (alterations in original).

**[4]** In *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 939 (9th Cir. 2005), we explained this approach as follows:

> [T]he Court articulated a two-step approach for evaluating when the normal presumption against retroactivity should not apply. Our "first task" under *Landgraf* is to "determine whether Congress has

expressly prescribed the statute's proper reach." *Landgraf,* 511 U.S. at 280, . . . . If Congress has clearly expressed that a law should be applied to conduct occurring before its enactment, our inquiry ends and we must defer to Congress' command. Otherwise, we proceed to *Landgraf's* second step and ask "whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the new law would have such a retroactive effect, the "traditional presumption teaches that [the new statute] does not govern[.]" *Id.*

**[5]** A critical feature of this standard is that we must proceed to the second step of the *Landgraf* approach unless Congress's intent that the statute be given retroactive application is clear. In other words, ambiguity as to a statute's retroactive application does not bar its retroactive application unless doing so "would impair rights a party possessed when he acted[.]" *Landgraf*, 511 U.S. at 280; *see also Lopez-Castellanos*, 437 F.3d at 853 ("When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."); *Peralta v. Gonzales*, 441 F.3d 23, 29 (1st Cir. 2006) (same).

The BIA has held that § 1229b(d) ends an alien's continuous physical presence for cancellation of removal eligibility as of the date of his or her commission of an offense, even if the offense was committed prior to the enactment of IIRIRA. *In re Perez*, 22 I. & N. Dec. 689, 700 (BIA 1999). Respondent argues that the BIA's position is entitled to deference pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). We do not find the

BIA's opinion dispositive. We have noted that "*Chevron* deference is predicated on the assumption that a statute's ambiguity constitutes an 'implicit delegation' to the agency to interpret the statute." *Castro-Cortez v. INS,* 239 F.3d 1037, 1053 (9th Cir. 2001) (citing *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 159 (2000)). The *Landgraf* test requires determinations first of Congress's clear intent, and second, of the impact of retroactive effect on the alien's rights. Respondent has not shown that the BIA is authorized by Congress to decide these issues.

Moreover, Valencia-Alvarez disagrees with respondent's interpretation of the statute. He argues that the clock-stopping provision contained no language addressing its retroactive applicability and that the IIRIRA Transitional Rules addressing the retroactive application of notice to appear provision, §1229b(d)(1)(A), are silent as to the "committed an offense" provision, §1229b(d)(1)(B). He further argues that the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. 105-100 (1997), amending IIRIRA's Transitional Rules, is also silent as to the retroactivity of the "committed an offense" provision.[9]

---

[9]The provision of the IIRIRA Transitional Rules at issue states: "Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act [8 U.S.C. § 1229b(d)(1) and (2)] (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act." Pub L. 104-208 (1996), 1996 H.R. 3610.

Similarly, the relevant provision of NACARA states: "Paragraphs (1) and (2) of section 240(d) of the Immigration and Nationality Act shall apply to orders to show cause . . . issued before, on, or after the date of enactment of this Act." NACARA § 203, Pub L. 105-100, 111 Stat. 2160 (1997).

Valencia-Alvarez argues that the provisions' failure to address the "committed an offense" provision, 8 U.S.C. § 1229b(d)(1)(B), meant that Congress intended that the clause not be retroactive.

Our determination as to Congress's intent under the first prong of the *Landgraf* test is controlled by our opinion in *Jimenez-Angeles*, which concerned the retroactive application of the notice to appear provision of § 1229b(d)(1)(A). After reviewing the Supreme Court's approach to IIRIRA in *St. Cyr*, 533 U.S. at 317-20, we held that, despite the existence of the Transitional Rules, "IIRIRA does not state with sufficient clarity that its repeal of § 1254 suspension of deportation relief is intended to apply to an alien in Jimenez-Angeles' position, such that it must be applied even if its operation is retroactive." 291 F.3d at 601. Even assuming that the holding in *Jimenez-Angeles* could be distinguished, we would not be able to conclude, as required by *St. Cyr*, that the statutory language is "so clear that it could sustain only one interpretation." 533 U.S. at 317 (quoting *Lindh*, 521 U.S. at 328 n.4).[10]

**[6]** Nonetheless, Valencia-Alvarez's request for relief fails because he cannot meet the second prong of the *Landgraf* standard: he cannot show that retroactive application of the "committed an offense" provision to him would impair any of his rights. Two features of Valencia-Alvarez's position preclude relief. First, unlike the plea at issue in *St. Cyr*, where the alien arguably bargained for something on the basis of existing immigration law, Valencia-Alvarez cannot assert that he relied on existing immigration law when he decided to com-

---

[10]The Supreme Court reached a similar position in *Fernandez-Vargas* concerning a different provision of IIRIRA, when it noted that "IIRIRA sometimes expressly made changes prospective as from the effective date and sometimes expressly provided they were applicable to earlier acts . . . . With such a variety of treatment, it is just too hard to infer any clear intention at any level of generality from the fact of retiring the old before-or-after language from what is now § 241(a)(5)." 126 S. Ct. at 2430. Similarly, in *Hernandez v. Gonzales*, 437 F.3d 341, 351 (3d Cir. 2006), the Third Circuit held that Congress had not clearly indicated that IIRIRA's repeal of the suspension of deportation provision there at issue should have retroactive application. The First Circuit, however, has held that the "committed an offense" provision, § 1229b(d)(1)(B), was clearly intended to be retroactive. *Peralta*, 441 F.3d at 31.

mit a crime. Second, following his commission of a crime, Valencia-Alvarez has never been eligible for discretionary relief. We find these features to be determinative and hold that the "stop-clock" provision bars Valencia-Alvarez from being eligible for discretionary relief.

The importance of the first feature is established by our opinion in *Jimenez-Angeles*. There, the alien presented herself to the Service shortly before IIRIRA became effective, hoping that the Service would bring proceedings against her before IIRIRA's more stringent provisions for discretionary relief took effect. 291 F.3d at 597. The Service, however, did not serve Jimenez-Angeles with a notice to appear until well after IIRIRA's effective date. The BIA found her removable and denied her request for cancellation of removal under IIRIRA's new provisions (requiring ten instead of seven years of continuous physical presence for an alien who was not a legal permanent resident). *Id*.

On review by this court, Jimenez-Angeles argued that the application of the new provisions to her was impermissibly retroactive. *Id*. at 598. We held that retroactive application of IIRIRA's provisions was permissible under the second step of the *Landgraf* test, explaining:

> When St. Cyr entered into his plea bargain, he gave up valuable legal rights, including his right to trial by jury. By contrast, when Jimenez-Angeles revealed herself to the INS, she gave up only her ability to continue living illegally and undetected in the United States.

*Id*. at 602. This case presents a similar situation because Valencia-Alvarez cannot argue that he gave up any legal right when he decided to commit a crime.

The critical nature of the fact that Valencia-Alvarez has never been eligible for discretionary relief is also indicated in

*Jimenez-Angeles*. After noting that Jimenez-Angeles had not given up any valuable legal right in revealing herself to the INS, we reasoned:

> [A]lthough Jimenez-Angeles may have had an expectation (or at least a hope) that suspension of deportation would be available to her when she turned herself in voluntarily less than one month before IIRIRA's effective date, that expectation (or hope) was not equivalent to the settled expectation St. Cyr gained by entering into his plea bargain before that date.

*Id*. Here, Valencia-Alvarez had only the hope that, had IIRIRA not been enacted, he might remain in the United States long enough to possibly qualify for discretionary relief from deportation.

The importance of the vesting of an alien's right is also reflected in the Third Circuit's recent opinion in *Hernandez v. Gonzales*, 437 F.3d 341 (3d Cir. 2006). Hernandez entered the United States in 1974 as a visitor and remained beyond his authorization. *Id*. at 343. In 1984, he pleaded guilty to attempted criminal possession of a controlled substance. *Id*. In 1997, Hernandez married a United States citizen and then applied for an adjustment of status. *Id*. In 1999, the application was denied and removal proceedings were commenced. *Id*. at 343-44. Hernandez was found to be removable and not eligible for discretionary relief. *Id*. at 344. The Third Circuit noted that prior to IIRIRA, a non-permanent resident alien convicted of a felony might nonetheless be eligible for suspension of deportation under certain conditions, but that after the enactment of IIRIRA, a controlled substance conviction disqualified a non-permanent resident alien from eligibility for cancellation of removal. *Id*. at 347. On appeal from the district court's denial of habeas relief, Hernandez objected to the retroactive application of the provision of IIRIRA, which rendered him ineligible for cancellation of removal, arguing

that he had relied on existing immigration law when he pleaded guilty in 1984, and that he had also relied on existing immigration law following the entry of his conviction and prior to the enactment of IIRIRA. *Id.* at 352-53. The Third Circuit determined that neither of Hernandez's objections barred retroactive application. It stated:

> Hernandez cannot credibly claim a retroactive effect from his guilty plea because immediately after he entered his plea he was ineligible for any kind of relief and, in fact, would remain ineligible for any kind of relief for a decade.

*Id.* at 353. The Third Circuit concluded:

> Because Hernandez's application for adjustment of status amounts to a decision to give up something to which he had no right in the first place — his ability to continue living illegally in the United States — we conclude that Hernandez's 1999 concession of his alienage does not cause Congress' repeal of suspension of deportation as applied to him to be impermissibly retroactive.

*Id.*

[7] In our case, Valencia-Alvarez was not eligible for discretionary relief from deportation at the time he committed the underlying offense, at the time he was convicted, or when IIRIRA became effective. Because he was admitted to the United States in July 1991, he did not have ten or even seven years of continuous residency in the United States until well after IIRIRA's April 1, 1997, effective date. Thus, Valencia-Alvarez had only the hope that if he managed to accrue a sufficient period of continuous residency he would then become eligible for discretionary relief from deportation or removal. The loss of an opportunity to become eligible for discretionary relief does not rise to the level of impairing a right pos-

sessed by a party.[11] *Landgraf*, 511 U.S. at 280. Accordingly, the application of the "committed an offense" provision of § 1229b(d) to Valencia-Alvarez does not have an impermissible retroactive effect.[12]

Moreover, our approach is in accord with the Supreme Court's opinion in *Fernandez-Vargas*. Fernandez-Vargas, a citizen of Mexico, first came to the United States in the 1970s, was deported for immigration violations, reentered in 1982, and remained in the United States thereafter. 126 S. Ct. at 2427. After marrying a United States citizen, Fernandez-Vargas filed an application to adjust his status to that of lawful permanent resident. *Id.* The application "tipped off the

---

[11]This conclusion is buttressed by the following commentary by the Supreme Court in *Fernandez-Vargas*:

> We understand Fernandez-Vargas's claim as falling within the second of Justice Story's categories of retroactivity (new consequences of past acts), not the first category of canceling vested rights. The forms of relief identified by Fernandez-Vargas as rendered unavailable to him by § 241(a)(5) include cancellation of removal, see 8 U.S.C. § 1229b(b), adjustment of status, see § 1255, and voluntary departure, see § 1229c. These putative claims to relief are not "vested rights," a term that describes something more substantial than inchoate expectations and unrealized opportunities. In contrast to "an immediate fixed right of present or future enjoyment," *Pearsall v. Great Northern R. Co.,* 161 U.S. 646, 673, . . . (1896) (internal quotation marks omitted), Fernandez-Vargas's claim to such relief was contingent, and it was up to him to take some action that would elevate it above the level of hope. It is not that these forms of relief are discretionary, cf. *St. Cyr*, 533 U.S. at 325, . . . ; it is rather that before IIRIRA's effective date Fernandez-Vargas never availed himself of them or took action that enhanced their significance to him in particular, as St. Cyr did in making his *quid pro quo* agreement[.]

126 S. Ct. at 2432 n.10.

[12]Our determination is not inconsistent with our recent opinion in *Sinotes-Cruz v. Gonzales*, No. 04-70745, ___ F.3d ___ (November 22, 2006), because Sinotes-Cruz was found to have pled guilty prior to IIRIRA's effective date and to have been "eligible for discretionary relief when IIRIRA became effective." (slip op. at 18735).

authorities to his illegal presence here," and resulted in pro-
ceedings that led to the reinstatement of Fernandez-Vargas's
1981 deportation order, but as a result of the passage of
IIRIRA, without the possibility of adjusting his status to law-
ful residence. *Id*. The Supreme Court in affirming the applica-
tion of IIRIRA to Fernandez-Vargas explained:

> St. Cyr's agreement for a *quid pro quo* and his plea
> were entirely past, and there was no question of
> undoing them, but the "transactio[n] or consideratio-
> [n]" on which § 241(a)(5) turns is different. While
> the law looks back to a past act in its application to
> "an alien [who] has reentered . . . illegally," 8 U.S.C.
> § 1231(a)(5), the provision does not penalize an
> alien for the reentry (criminal and civil penalties do
> that); it establishes a process to remove him "under
> the prior order at any time after the reentry." *Ibid.*
> Thus, it is the conduct of remaining in the country
> after entry that is the predicate action; the statute
> applies to stop an indefinitely continuing violation
> that the alien himself could end at any time by vol-
> untarily leaving the country.

*Id.* at 2432 (footnote omitted). Similarly, in the case at bar,
Valencia-Alvarez has been subject to removal or deportation
ever since his conviction.

The fact that Valencia-Alvarez was never eligible for dis-
cretionary relief from deportation or removal distinguishes his
situation from that presented in *Lopez-Castellanos*, where we
held that a provision of IIRIRA which expanded the definition
of aggravated felony could not be retroactively applied to a
conviction that was not an aggravated felony when entered.
437 F.3d at 853. We reasoned that '[t]o deprive Lopez-
Castellanos of eligibility for discretionary relief would pro-
duce an impermissible retroactive effect for aliens who, like
Lopez-Castellanos, were eligible for a discretionary waiver at
the time of the plea." *Id*. Here, however, the application of 8

U.S.C. § 1229b(d)(1)(B) to Valencia-Alvarez does not alter the character of his conviction or deny him any existing eligibility for discretionary relief. Rather, it denies him only the possibility of becoming eligible for discretionary relief through his continued presence in the United States.

The cases cited by Valencia-Alvarez do not undermine the need for an existing right before the retroactive application of § 1229b(d)(1) is implicated. For example, in *Henry v. Ashcroft*, 175 F. Supp. 2d 688 (S.D.N.Y. 2001), the alien had entered the United States in 1984 as a legal permanent resident and was convicted of petit larceny for the first time in 1987. *Id.* at 691. Removal proceedings were commenced against Henry in 2000. *Id.* After the BIA denied her relief, Henry filed a habeas petition with the district court. *Id.* The critical issue before the district court was the retroactive application of the provision of § 1229b(d)(1)(B) to Henry's 1987 conviction. The district court granted the writ, holding:

> [u]nder the immigration laws in effect prior to IIRIRA, petitioner did not become statutorily ineligible for INA § 212(c) relief when she entered a guilty plea to petit larceny on October 5, 1987. After petitioner accrued seven continuous years of lawful residence, she had a reasonable expectation that INA § 212(c) relief was available to her. It is an impermissible retroactive application of the clock stopping provision to strip petitioner of that reasonable expectation.

*Id.* at 696. The district court further noted that "[r]egardless of whether she relied on her eligibility, it is the retroactive denial of an already accrued eligibility for discretionary relief that gives the clock stopping provision its impermissible retroactive effect." *Id.* at 696 n.4.

The same distinction is noted in the case most heavily relied upon by Valencia-Alvarez, *Generi v. Ashcroft*, No.

4:03-CV-15, 2004 WL 771138, 2004 U.S. Dist. LEXIS 6396
(W.D. Mich. Feb. 19, 2004). Generi entered the United States
in 1969, and pleaded guilty to attempted breaking and enter-
ing in 1974. Removal proceedings were commenced in 2001.
Generi challenged the application of the "committed an
offense" provision of § 1229b(d)(1)(B) to his 1974 convic-
tion. In granting relief, the district court wrote:

> The issue here is not whether Petitioner considered
> the possible immigration consequences of his actions
> prior to committing breaking and entering in 1974.
> Instead, the Court must consider Petitioner's settled
> expectations as they existed immediately prior to the
> enactment to the IIRIRA and determine whether the
> passage of the IIRIRA impermissibly upset those
> expectations.

2004 WL 771138, at *9, 2004 U.S. Dist. LEXIS 6396 at *24.
Thus, in *Generi* and *Henry*, the aliens were eligible for discre-
tionary relief when IIRIRA became effective, thus distin-
guishing them from Valencia-Alvarez who has never been
eligible for discretionary relief.[13]

## V

Valencia-Alvarez's arguments in this petition for review,
although well presented by counsel, are not persuasive. The
Service's assertion of additional charges following the BIA's
2002 opinion was not barred by res judicata because that deci-

---

[13]This conclusion also defeats Valencia-Alvarez's argument that apply-
ing § 1229b(d)(1)(B) to his situation denied him due process under the
Fifth Amendment. Although aliens are entitled to due process of law,
*Mathews v. Diaz*, 426 U.S. 67, 77 (1976), they, like others, must in the
first instance possess a liberty or property interest. *Bd. of Regents v. Roth*,
408 U.S. 564, 569-71 (1972). Because we determine that Valencia-
Alvarez was never eligible for discretionary relief, he has not asserted a
liberty or property interest that could be impacted by the application of
§ 1229b(d)(1)(B) to his situation.

sion was not a final judgment rendered on the merits in a separate action. Valencia-Alvarez's contention that his continuous residence for purposes of becoming eligible for discretionary relief should not stop with his 1996 criminal offense (as provided by 8 U.S.C. § 1229b(d)(1)(B)) fails because he has not asserted any cognizable right that is compromised by the retroactive application of the statute. Accordingly, the petition for review is **DENIED**.